# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

CLARICE C. HAWKINS,

    *Plaintiff*,

vs.

    Case No. 10-2629-EFM

MICHAEL J. ASTRUE, Commissioner of Social Security,

    *Defendant.*

## MEMORANDUM AND ORDER

Plaintiff Clarice C. Hawkins seeks review of a final decision by the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits and supplemental security income benefits. Having reviewed the record, and as described below, the Court affirms the order of the Commissioner.

### I. Legal Standard

Pursuant to 42 U.S.C. § 405(g), "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." Upon review, the Court must determine whether substantial evidence supports the factual findings and whether the administrative law judge ("ALJ") applied the correct legal standard.[1] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires

---

[1] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

more than a scintilla, but less than a preponderance."[2] The Court is not to reweigh the evidence or substitute its opinion for the ALJ.[3] However, the Court must examine the record as a whole, including whatever in the record detracts from the ALJ's findings, to determine if the ALJ's decision is supported by substantial evidence.[4] Evidence is not substantial if it is overwhelmed by other evidence or if it is a mere conclusion.[5]

To establish a disability, a claimant must demonstrate a physical or mental impairment that has lasted or can be expected to last for a continuous period of twelve months and an inability to engage in any substantial gainful work existing in the national economy due to the impairment.[6]

The Commissioner uses a five-step sequential process to evaluate whether a claimant is disabled.[7] The claimant bears the burden during the first four steps.[8] In steps one and two, the claimant must demonstrate that she is not presently engaged in substantial gainful activity and she has a medically severe impairment or combination of impairments.[9] "At step three, if a claimant can show that the impairment is equivalent to a listed impairment, [s]he is presumed to be disabled and entitled to benefits."[10] If, however, a claimant does not establish an impairment at step three,

---

[2]*Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (quotations and citations omitted).

[3]*Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (citations omitted).

[4]*Wall,* 561 F.3d at 1052 (citing *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007)).

[5]*Id.* (citing *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005)); *see also Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) (citation omitted).

[6]42 U.S.C. § 1382c(3)(A); *see also* 42 U.S.C. § 423(d)(1)(A).

[7]*Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); 20 C.F.R. § 404.1520(a).

[8]*Lax*, 489 F.3d at 1084.

[9]*Id.* (citations omitted).

[10]*Id.*

the process continues. The Commissioner assesses a claimant's residual functioning capacity (RFC), and at step four, the claimant must demonstrate that her impairment prevents her from performing her past work.[11] The Commissioner has the burden at the fifth step to demonstrate that work exists in the national economy within the claimant's RFC.[12] The RFC assessment is used to evaluate the claim at both step four and step five.[13]

## II. Factual and Procedural Background

Plaintiff Clarice C. Hawkins applied for a Title II period of disability and disability insurance benefits and a Title XVI supplemental security income (SSI) on March 25, 2008 alleging that her disability began on March 4, 2008. Her applications were denied on July 11, 2008. Plaintiff requested a hearing before an administrative law judge (ALJ) which occurred on April 7, 2010. On June 30, 2010, the ALJ issued an unfavorable decision finding that Plaintiff was not under a disability at any time from March 4, 2008, Plaintiff's alleged onset date of disability, through the date of the decision. As such, the ALJ concluded that Plaintiff was not entitled to disability and disability insurance benefits or supplemental security income benefits.

The relevant facts leading up to Plaintiff's claims are summarized as follows. Plaintiff alleges that her disability began on March 4, 2008, when she was admitted to Providence Medical Center after presenting to the emergency department with reports of yellowness of her eyes. She also reported weakness and a gradual decline in her appetite. After a liver biopsy was conducted on March 11, 2008, the medical records indicated that Plaintiff suffered from autoimmune chronic

---

[11]*Id.*; *see also* 20 C.F.R. § 416.920(a)(4)(iv).

[12]*Lax*, 489 F.3d at 1084; 20 C.F.R. § 416.920(a)(4)(v).

[13]*See* 20 C.F.R. § 404.1520(a)(4)(iv)-(v).

hepatitis, cirrhosis of the liver with jaundice, conjugated hyperbilirubinemia, elevated liver enzymes and coagulopathy due to hepatitis. She was prescribed prednisone that she would have to remain on for approximately one year.

In Plaintiff's follow up appointments in April, Plaintiff told the doctors that she was feeling ok overall, and she denied chest pain and shortness of breath at these visits. The following month Plaintiff reported that she was feeling good, her appetite had increased, she was not drinking alcohol, and she had no abdominal pain. Dr. Patel reduced Plaintiff's prednisone to 20 mg daily.

In the summer of 2008, Plaintiff had several visits to Dr. Arakelova telling her that she was experiencing abdominal distention. After Plaintiff underwent an ultrasound, the impression was small gallbladder polyp, right renal stones, no hydronephrosis seen, bilateral renal cysts, small spleen, and no ascites.

In early 2009, Plaintiff reported pain in her upper right arm. Dr. Arakelova noted there was no swelling or redness.

On April 19, 2009, Plaintiff was admitted to Providence Medical Center after having two trips to the emergency room for abdominal pain. Her urine drug screen was negative for alcohol, but it was positive for cocaine and cannibinoid. Plaintiff's liver appeared normal in size. A nodule in the left adrenal gland warranted further investigation. Dr. Patel thought her abdominal pain appeared consistent with renal calculi and passage of renal calculi. He continued her on Azathioprine for her autoimmune hepatitis.

While Plaintiff was hospitalized, Plaintiff underwent consultation with Raul Huet, M.D., for polysubstance abuse. Dr. Huet's impressions were cannabis dependence; cocaine abuse; alcohol abuse-sustained full remission; history of amphetamine abuse in sustained full remission; cocaine

induced mood disorder, with onset during intoxication; rule out history of major depressive disorder, single episode, full remission. Plaintiff refused both drug counseling and rehabilitation, saying she believed she could quit cocaine and marijuana use on her own and intended to do so.

Plaintiff visited several doctors over the remainder of the year and up to her administrative hearing, sometimes indicating that she was experiencing abdominal pain, and other times indicating that she was not experiencing abdominal pain.

At the administrative hearing in April, 2010, Plaintiff testified that she was 57 years old, five feet four inches, and weighed 127 pounds. Plaintiff has her GED, can read and write, and prior to the onset of her disability, she last worked in 2008 as a home health care worker doing cooking and cleaning for three years. She testified regarding her limitations and stated that she became out of breath easily and could not walk or stand for extended periods. When describing her daily activities, Plaintiff testified that she would watch television daily, go to a movie every couple of weeks, and go to church every couple of weeks. She lived by herself and could take care of her personal needs, but a friend or her daughter would normally cook and do her laundry. Plaintiff was able to prepare simple meals. Plaintiff stated that although her liver was getting better, she did not believe that she could work.

A vocational expert also testified, noting that a hypothetical claimant with the same restrictions as Plaintiff could perform Plaintiff's past jobs of shirt presser and light cleaner. In the second hypothetical the ALJ posed in which the individual would have added limitations, the vocational expert testified that the limitations would eliminate Plaintiff's past work.

In the ALJ's written decision, she first determined that Plaintiff met the insured status requirements of sections 216(i) and 223 of the Social Security Act and that Plaintiff had acquired

sufficient quarters of coverage to remain insured through December 31, 2011. As such, the ALJ determined that Plaintiff must establish a disability on or before that date to be entitled to a period of disability and disability insurance benefits.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 4, 2008, the alleged date the disability began. At step two, the ALJ determined that Plaintiff had the severe impairments of autoimmune hepatitis and polysubstance abuse disorder, including cocaine and marijuana. At step three, the ALJ found that Plaintiff's impairment, or combination of impairments, did not meet or medically equal one of the listed impairments.

After establishing Plaintiff's residual functioning capacity (RFC) of light work, limited to tasks that can be learned in thirty days or less involving no more than simple work-related decisions with few work place changes, the ALJ found that claimant was capable of performing her past relevant work as a shirt presser. As such, the ALJ concluded that Plaintiff was not disabled under the Social Security Act.

Plaintiff requested review of the ALJ's decision by the Appeals Council which denied her request on September 27, 2010. The decision of the ALJ, therefore, stands as the final decision of the Commissioner. Having exhausted her administrative remedies, Plaintiff seeks relief from this Court.

### III. Analysis

Plaintiff claims the ALJ erred (1) in making her credibility finding because it was not supported by substantial evidence; and (2) in determining that Plaintiff could perform her past relevant work.
...

**1. Whether substantial evidence exists to support the ALJ's credibility finding**

Plaintiff contends that the ALJ's credibility finding is not supported by substantial evidence. In evaluating a disability claim based on pain, the ALJ must first determine the objective medical evidence that demonstrates a claimant suffers from an underlying medically determinable physical or mental impairment.[14] Once a claimant has established by objective medical evidence that she suffers from a pain-producing impairment, the ALJ must consider the relationship between the impairment and the pain alleged.[15] If an appropriate nexus exits, the ALJ then considers all the evidence, both objective and subjective, in determining whether a claimant's disability is in fact disabling.[16] Factors that may be relevant in assessing symptoms of pain may include, but are not limited to:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.[17]

Here, the ALJ determined that Plaintiff's impairments, autoimmune hepatitis and polysubstance abuse, were severe enough to restrict her work-related abilities. However, after considering the objective medical evidence and Plaintiff's subjective complaints in light of the Commissioner's credibility factors, the ALJ found that Plaintiff's impairments did not restrict her to the disabling levels that Plaintiff alleged. The ALJ noted the appropriate law and the factors to

---

[14]*Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987); *see also Williams v. Bowen*, 844 F.2d 748, 753 (10th Cir. 1988).

[15]*Luna*, 834 F.2d at 164.

[16]*Id*.

[17]*Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993) (citations omitted)

-7-

be considered in making a credibility determination.

In making her determination that Plaintiff's pain was not disabling, the ALJ first noted Plaintiff's ailments and that the objective medical evidence indicated that Plaintiff was feeling well and her condition was responding well to medication. The ALJ also determined that the claimant was following her prescribed treatment plan, and that in April of 2009, Plaintiff's hepatitis was well controlled and her liver was normal in size. In addition, the ALJ noted that Plaintiff told her doctors several times that she was feeling good.

The ALJ found that Plaintiff's statements were not entirely credible because of her numerous inconsistent statements. Although the ALJ was incorrect in stating that Plaintiff tested positive for both cocaine and marijuana three times, Plaintiff did test positive in April of 2009 for both cocaine and marijuana. At the administrative hearing, Plaintiff flatly denied to the ALJ that she had used drugs since 2008 and could not explain why she had tested positive in April of 2009 when the ALJ specifically asked her that question. The ALJ noted that "[t]he fact the claimant provided inaccurate information on a matter so integral to determining disability suggests that much of what the claimant has alleged may be similarly unreliable."

The ALJ then considered Plaintiff's daily living activities, another factor in determining whether pain is disabling. The ALJ found that Plaintiff's daily living activities were not consistent with Plaintiff's allegations of pain. Noting that Plaintiff maintained a rather independent lifestyle, had the ability to care for herself and her personal hygiene, and Plaintiff's participation in activities such as housework and shopping once a week, the ALJ determined that these activities were not consistent with disabling pain. The ALJ properly linked her credibility finding with specific evidence in the record.

"Credibility determinations are peculiarly the province of the finder of fact, and a court will not upset such determination when supported by substantial evidence."[18] Generally, the court will usually defer to the ALJ on matters involving witness credibility.[19] Here, the ALJ's credibility determination was proper and supported by substantial evidence in the record. As such, the Court finds no error in the ALJ's credibility determination.

### 2. Whether the ALJ erred in determining that Plaintiff could perform her past work

Plaintiff argues that the ALJ's conclusion that Plaintiff could perform her past relevant work is not supported by substantial evidence. Plaintiff asserts that the hypothetical the ALJ posed to the vocational expert was defective because it did not adequately reflect all of Plaintiff's impairments, which include that she would become out of breath, could not walk or stand for extended periods, and that she did not think she could work. In making the argument that the ALJ's hypothetical was flawed, Plaintiff asserts that the ALJ did not adequately evaluate medical evidence regarding her physical problems, ignored evidence of additional impairments, and improperly discredited her allegations of severe limitations caused by her impairments.

Hypothetical questions posed to the vocational expert must reflect with precision a claimant's impairments, but only to the extent that they are shown by the evidentiary record.[20] As noted above, the Court found that the ALJ properly determined Plaintiff's credibility. Furthermore, the ALJ noted during the administrative hearing that nothing in the medical record corroborated Plaintiff's claim for shortness of breath. As such, it appears that the ALJ appropriately evaluated

---

[18]*Tracy v. Astrue*, 518 F. Supp. 2d. 1291, 1303 (D. Kan. 2007).

[19]*Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

[20]*Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996).

the medical evidence and Plaintiff's credibility in formulating the hypothetical question to the vocational expert. In the hypothetical given to the vocational expert, the ALJ found that Plaintiff could perform light work limited to tasks that could be learned in 30 days or less, involving no more than simple, work-related decisions with few workplace changes. From this hypothetical, the vocational expert opined that Plaintiff could perform the job of shirt presser, which had the same duties as Plaintiff's past relevant work and is considered unskilled light work. Accordingly, the ALJ's conclusion that Plaintiff could perform her past relevant work is supported by substantial evidence.

In sum, substantial evidence on the record as a whole supports the Commissioner's decision.

**IT IS ACCORDINGLY ORDERED** that the judgment of the Commissioner is **AFFIRMED**.

**IT IS SO ORDERED**.

Dated this 27th day of September, 2011.

*Eric F. Melgren*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE